The next case in our call this morning is case number 108-786, Speed District 802 v. Rachel Warning, et al., etc. Being agenda number six. Counsel, we'll let the courtroom clear a little bit so you don't have to Yes, Your Honor. Thank you. You may proceed, sir. Morning, Chief Justice, and may it please the Court, Counsel. My name is William Gleason and I represent the appellant, Speed District 802. President Obama wrote in his novel, The Audacity of Hope, that teachers need to be accountable in the classroom and that school districts have to have the maximum flexibility to be able to remove those teachers who are ineffective. In accordance with those wishes, recently the Illinois legislature has adopted something called the Performance Evaluation Reform Act of 2010. In that act, the legislature is specifically noting that quality teachers impact the They also took issue with the way that the teachers were being evaluated and were concerned that over a 13-year period, only 0.4 percent of teachers in the state of Illinois were being rated as unsatisfactory and removed from the classroom, which brings us to the issues in this case. This involves a fourth-year probationary teacher who was given an unsatisfactory performance evaluation on March 1, 2005. Pursuant to the collective bargaining agreement in place, there was an attempt to remediate her deficiencies as a teacher. During these meetings about her performance as a teacher, she requested a union representative. Pursuant, the Illinois Educational Labor Relations Board and the First District Illinois Appellate Court have held that that was a protected activity under the Illinois Educational Labor Relations Act. However, for several reasons, I would contend that it was not a protected activity. The first basis for that under Weingarten to have a union representative present, it was waived by the collective bargaining agreement. Section 310 of the party's collective bargaining agreement specifically stated that an employee was entitled to have a member of the association present during any meeting where disciplinary action would take place. The last sentence of that section specifically states that performance is not disciplinary action. I believe in accordance with this Court's ruling in Ehlers, that would constitute a waiver of a Weingarten right in that situation. In Ehlers, this Court looked at a sheriff's officer who demanded a union representative in an informal meeting with the sheriff. Looking at the collective bargaining agreement there, the Court said that since the sheriff was able to only have a union representative for interrogations as defined by the Uniform Disciplinary Act, then it waived the right to have a Weingarten union member present in any other situation. With that holding in mind here, Ms. Warning clearly had no right to insist upon a union representative at a performance-based meeting, which is exactly- Would you characterize those meetings as investigatory? No, Your Honor, I would not. In fact, the decision about whether she was a satisfactory teacher was already made prior to the meetings taking place. So this meeting was to tell her the results of her evaluation and to institute a remediation plan to tell her how to improve her workplace performance. That could lead to discharge? It could lead to a non-renewal, but not a discharge per se, Your Honor. And that first meeting of that investigation by the, someone sitting in the classroom, that was for 20 minutes? I believe that's what the record shows, is that the- And that was the only time when a union representative could be present, in your opinion? I don't believe the union representative would need to have been present when the principal was observing the teacher in the classroom. There's no interaction between the principal and the teacher at that point. He's simply observing her classroom and watching how she conducts her class and looking at her performance as a teacher. There's no discussion or give-and-take between the principal and the teacher at that point. So all of the other meetings that went on for months, the union representative on your position was not permitted to be present? Correct, Your Honor. Now, Mr. Gleason, the collective bargaining agreement that you referred to that you believe waived the right to representation, when was that ratified? When was it approved by the school district? I don't have the exact date, Your Honor. Was it after 1987? Definitely after 1987, Your Honor. Far after that. And in the Illinois Educational Labor Relations Board brief on page 29, their footnote, number three, talks about the Summit Hill opinion that, as I understand it, and I may not understand it, that's why I'm asking the question, viewed these post-observation conferences as investigatory interviews. Is that part correct? About Summit Hill? I believe that Summit Hill may have said that in dicta, but it involved a totally different factual situation, Your Honor. That was discussing whether a tenured teacher who was undergoing a remediation pursuant to Section 24A of the Illinois School Code was entitled to a union representative, and in dicta they held that, well, if this was a non-tenured teacher, perhaps we wouldn't have found that. Maybe we would have found that this was a meeting likely to lead to discipline was the actual holding. It didn't say that it was investigatory per se. Well, do you think that the, I mean, we'll take a close look at that decision, but if it was established in 1987 in that decision, administrative decision, that these are investigatory interviews, would that not be part of the umbrella that the collective bargaining agreement would be interpreted under? I don't believe so, Your Honor, and I don't believe that that's what the holding of Summit Hill is. I think the parties specifically went. That wasn't my question. We'll take a look at it and decide what's in Summit Hill, but if we were to conclude that, my question is would that not be part of the umbrella that the collective bargaining agreement would be viewed under? If there was no provision in there, Your Honor, perhaps, but certainly not in this case where there is a distinct provision in there which would have created it, this collective bargaining agreement waived that right regardless. Counsel, is that because of the status of the teacher? One is tenured and the other is probationary? That doesn't have any effect with regard to our collective bargaining agreement, but that was the distinction that I'm raising with regard to the Summit Hill case. That was a tenured teacher and not a probationary teacher, Your Honor. I also have another question. Did warning receive a September 2004 evaluation by someone other than Runyon, the principal, indicating that warning was excellent and professional, and should that evaluation have been considered? There was an observation done in September of 2004, which was positive, Your Honor, but the end of all the cumulative. By someone other than the principal? Yes, Your Honor, a different staff member. And you were saying? It was positive, but the overall summative evaluation on March 1, 2005, determined that she was not satisfactory. She was unsatisfactory. Because it was in December of 2004 that the actual process began. Is that not right? No, Your Honor. The observations took place in February, I believe. Was there a meeting with warning in December of 2004? The union and warning have tried to raise in their brief that she engaged in protected activity because she brought a union representative to a disciplinary meeting in December of 2004, Your Honor. That was different than this particular issue? Yes, Your Honor. Oh, so that's a totally different issue? A totally different issue, Your Honor, yes. Where do we draw the line on what is and is not protected activity if we find that the right must be guaranteed in the contract? The right doesn't necessarily have to be guaranteed in the contract, Your Honor. Pursuant to Weingarten, the right of a union representative being present at disciplinary and investigatory meetings is founded in Section 7 of the National Labor Relations Act, and accordingly it would be brought in under Section 3 of the Illinois Educational Labor Relations Act. But I think the distinction which we're asking the court to draw is between meetings where we're talking about an employee's performance versus meetings where we're investigating an employee for disciplinary situations. And is that a contract interpretation issue? In this case, it presents a contract interpretation issue because I believe that the clear language of our collective bargaining agreement shows that even if they had a Weingarten right in that situation, they clearly waived it by the language that's in the collective bargaining agreement. Doesn't this case come down to a standard of review issue? Well, there is a standard of review issue, Your Honor, and I believe with regard to my first and second arguments about the effects of whether or not this is protected activity under Sections 14A1 or 14A3, it's going to be a de novo standard. And usually it's a clearly erroneous standard because it's a mixed question of fact and law. However, in this case, the parties stipulated the facts that these were performance-based meetings about her performance as a teacher and that she requested a union representative at them. So since the facts are stipulated, this presents a pure question of law to the court. The other question is the interpretation of the collective bargaining agreement. Weren't there other factual matters that the Board decided than just that, though? There were other factual matters decided, such as the motive under Section under the third prong of the test. However, that would be a factual question. The first two questions about whether or not she had the legal right to insist upon it, whether it was protected activity under the Act, presents a legal question to the court. Her insistence of having a union rep there, the dissent makes the point that that could be, since the position of the district was that she didn't have that right, that that could be taken into account as one of the factors as whether to dismiss her mere insistence that a rep be there. Do you take that same position, or was that one of the factors in determining that she should not move on, or is that the dissent just making that argument? That's the dissent's argument, Your Honor. My position isn't that we discharged her for insisting upon this union representative, and I think the facts belie that. Isn't that what the Board decided, though? No, Your Honor. The Board decided that she was an unsatisfactory teacher and decided to non-renew her contract. So that was not even one of the factors mentioned? The Labor Board found that it was, but that's not our position that it was. So bringing myself back to where I was, if she didn't have the right to do it under the contract, her insistence upon that right cannot be considered protected activity. I think the first district's holding in the Schomburg Board of Education case makes this clear. In that case, a teacher insisted upon her evaluation being reviewed and changed. The court found that that's not protected activity because, in that case, the collective bargaining agreement had waived the right to do that. An employee insisting upon a right, which she doesn't have under the agreement, is not protected activity. It's certainly not concerted activity either. She's not seeking to further a group interest. She's seeking to further her own individual interest. So it's clear that that right is not protected. Ms. Warning and the Attorney General's Office have said, well, it's irrelevant whether it was protected concerted activity because she asked the union to assert the right on her behalf. And as such, it's protected under Section 1483 of the Act as protected union activity. I think that takes a reading of what protected union activity is much too far, because otherwise she could have insisted upon the union insist that we bring in hot tea to the meeting and that becomes protected union activity. The underlying act, which she was insisting upon, needed to be protected. Whether she asked the union to enforce it or not is really irrelevant. And I believe that the International Transportation Service case, which I cited out of the D.C. Circuit, makes a very good point about why that's the case in the slippery slope that could be involved with another reading of that. The second point, which we bring before the Court, is that even without the contractual language that we had here, there is no right under Weingarten to a union representative to be present at a performance-based meeting. As I previously indicated, Section 7 of the National Labor Relations Act is where the Weingarten holding gets its roots from. But Weingarten made it very specific that this was a limited right and in fact specifically said that it was a right that was not going to be guaranteed to talks about work performance and how to improve your performance. And there were standards deduced from there that the meeting had to be investigatory, the employee had to request the union there. Excuse me. There had to be a reasonable belief that disciplinary was imminent from the meeting and it couldn't interfere with the legitimate prerogatives of the employer. In this case, I don't believe the meeting here was investigatory. They weren't seeking to elicit facts from her or ask her about what was going on. They had already determined that she was an unsatisfactory teacher. They were having meetings with her to tell her how to improve her performance. That's not what an investigatory meeting consists of. Third is I don't think disciplinary action was reasonable for her to assume that. First off, we're back to the contract which specifically says performance is not disciplinary action. So if you're discharged for your employee or non-renewed for your performance, that's not disciplinary action as specifically stated in our contract. Moreover, the Lockport case from 1976 out of the Fourth Circuit says that discipline with regards to the non-renewal of a probationary teacher is not disciplinary action. A teacher doesn't have any right to further employment until they're tenured. So the term discipline doesn't have the same meaning. The last point I would make is that enforcing an employer in this case to have the union representative present would infringe upon our legitimate interest as an employer. What Weingarten is talking about with that prong of the test is that's the employer's ability to walk out of the meeting if there's an insistence upon union representation and it doesn't want to permit it. So basically, we would have to have walked out of the room and never met with the teacher. However, pursuant to our collective bargaining agreement, we were ordered or we were required to attempt to remediate her. It would be impossible for us to attempt to remediate a poor-performing teacher without ever having a meeting or without ever talking with her. So we didn't have the ability that employers are given under the Weingarten standard to walk out of the room. So for those reasons, I don't believe that they showed that there was protected activity under Sections 14A1 or 14A3 of the Act. And as such, they never met the prima facie case before the Illinois Educational Labor Relations Board. The next point which I'd like to discuss with the Court was the remedy that was ordered by the Labor Board. In this case... Are you saying that it's only investigatory if it's a discipline like misconduct kind of discipline as opposed to whether or not you're going to keep or lose your job based on what you've done or not done in the classroom? I believe those are two different standards, Your Honor, and the first one I would believe is investigatory, and the second one was, was it reasonably going to lead to discharge? An investigatory meeting is one where I'm seeking to elicit facts about what happened. I'm seeking to determine what happened. And you'll see holdings from federal courts and from the National Labor Relations Board where if I walk into a meeting and just tell you you're discharged, you're suspended, but don't really, I'm not seeking to elicit facts about whether you engaged in the conduct, that's not investigatory and Weingarten's not implicated at all. I got that part. My question is whether or not, did the teacher do X, Y, and Z or not? That's a fact question. And if it's tied to their performance and it's tied to whether or not they're going to keep their job, why is that not investigatory? It's not investigatory because he's not, he's telling her what to do. He's not seeking information from her about what she did. He already observed that. But I thought you said at the very beginning, your first line was, the purpose of the meeting was an attempt to remediate deficiencies. Well, how do you remediate anything with another person unless you talk about it and talk about what they've done or not done and what they need to do and not, and they don't need to do? Is that not a fact discussion? I don't believe that's a fact discussion, Your Honor. What happened was he determined that she had done certain things wrong and set up a meeting to discuss those things. He had already determined that they were wrong. What he was telling her was what she needed to do out into the future to make it correct. He wasn't asking her whether or not she did those things wrong. He had already made that determination in his evaluation. So I don't believe it's investigatory at that point. I hope I answered Your Honor's question. Thank you. In this case, the Labor Board ordered that Ms. Warning be reinstated with tenure rights. It's our position that the awarding of tenure to a teacher is a nondelegable duty of the Board of Education, which should not be infringed by any other agency. That's because of the perils of permitting teachers to... If we find that this discharge was unlawful, what then would make her whole if we could not, if tenure is not given? I believe she could be made whole through front pay, Your Honor. And I think it's an important distinction in this case is before there's even any discriminatory conduct taking place, we had already rated her unsatisfactory, and we had already provided her with a notice under Section 2411 of the school code that she was going to be non-renewed but were still attempting to remediate her performance. So I believe it would be inappropriate specifically in this case as well. So how would she get back on tenure track? Does it start on over getting? I don't believe it would be appropriate to reinstate her at our district because I believe as a matter of law it would be tenured if she was reinstated. And I see that I've run out of time. So we would ask that this Court reverse the decision of the First District Court and reverse the decision of the ILRB and rule in favor of the Board of Education that Ms. Warning has not met a prima facie case under 14A1 or 14A3 and that she's not entitled to reinstatement as a tenured teacher. Thank you. Good morning, and may it please the Court, Assistant Attorney General Ann Chalstrom for the Educational Labor Relations Board and its Chairman. This is not a Weingarten case. Weingarten raises issues of timing and an assertion of rights at the appropriate time by the employer, all of which are lacking here. The district had to assert its view that Warning was not entitled to representation at the time she sought to bring representation to the meetings. It did not do this. In fact, it acquiesced in her bringing the union representative. To be clear, the district isn't without rights in these situations, but it must assert its rights at the appropriate time. It's not an after-the-fact assertion once litigation begins, as the district attempted to do here. A few critical facts should be noted. Here, the district did not deny Warning union representation, but it acquiesced in her bringing the representative with her to meetings with administrators beginning in December 2004 and continuing throughout March and April 2005. Warning received a satisfactory evaluation her first three years in the district and then an excellent evaluation in November 2004. What does the record show about what happened when she brought the union representative with her to this meeting? At which meeting, Your Honor? Well, the first time that the union representative came with her. Right. That would be December 2004. I believe it shows that the district acquiesced, and they may have even agreed for her to bring the union representative with her at that point. I don't believe the record reflects the details of how that meeting proceeded or the facts of that meeting. In reading this, I thought I read about they told her, don't bring her or you're not welcome here. Where is that in? I'm sorry. That would be in March after she was given her. This is after the first meeting? Correct. Correct, Your Honor. We have December 2004 meeting. She brings the union representative. We're not sure. The record doesn't reflect the ins and outs of that meeting. She's then after. Wasn't that a different meeting? A counsel explained to me that that was a total different issue. It was an investigatory meeting in December 2004, and it was a disciplinary action. It wasn't related to the performance-based action. I'll agree with the last sentence. It wasn't an evaluation meeting at that point. So it was a total different issue. So, therefore, the board didn't have to protest, I mean, that someone was there. Because it was a disciplinary meeting. It wasn't a post-evaluation meeting at that point. It was a meeting about, I believe, there was some improper language, alleged improper language. So that was a disciplinary meeting, and she had a right to have a representative there. And nobody contests that that was not protected union activity at that point. That's correct. Okay, so that aside now. Okay. The performance-based meeting that Justice Garmon is speaking to, do you agree that she didn't have a right to have someone there? And that was in March? No, no, no. I don't agree with that. The board did not decide the issue as to whether she had the right to bring a union representation, union representative to that meeting, what we'll call here a Weingarten right, because the district acquiesced and she brought the union rep with her. But did they not protest? As Justice Garmon said at the March meeting, you know, you don't have a right to, but they permitted them to stay. That's the key point. The district permitted her to stay, and it continually permitted her to bring the union rep with her in March and April in order to make this a Weingarten case. What should they have done? They should have said, the district administrator should have said, we're not meeting with you if you bring representation with you. And then the case would percolate. These Weingarten cases are denial of union representation cases. At that point, an unfair labor practice could have been brought by the teacher against the district if she believed she had the right to bring the union rep with her, and it would have percolated through before the board, the issue would have been raised before the board as a Weingarten issue and could have percolated that way. But it wasn't because they allowed her to bring the union representative with her, knew that they did it, and discharged her because of it. So we've totally taken this out of the Weingarten context, and her bringing the union representative with her and discharging her because of it is clearly protected union activity under Section 14A3 of the Act. But it still didn't, just because the union representative was there, it doesn't mean it necessarily turned into a discipline hearing where she now had a right to have someone there. It still was the same kind of performance-based hearing where the union representative was there, but it didn't change the hearing or the nature of the hearing. But we don't even get into the question of under Weingarten, or as counsel brought up, these contractual limits of Weingarten, whether it was waived, what kind of hearing was it? Was it discipline? Was it not? Because that's not the whole issue in front of us, because she brought the union representative with her. That's all we look at. You don't put the horse back in the barn after you left. It seems to me that there's a big difference between a disciplinary meeting where she does have a protected right to have a union person there and the performance-based hearing where she doesn't, if that's our interpretation, that she doesn't have a right. So there is a big difference. I'll make two points on that. The district could have forced the issue by denying her union representation and then put the issue properly before the board to determine whether she had the right. My second point on that, as the Court pointed out during the appellant's argument, is that in Summit Health Footnote 7, what the board talked about regarding post-observation meetings is the board rejected the argument that post-observation conferences are not investigatory interviews. But the board never determined that in this case. It didn't need to because she brought the union rep with her and because the district discharged her before that action. How do we know that? Is that an inference? I didn't think they said we're discharging you because you brought your union rep. This would fall under the prongs of the anti-union motivation and the pretext. To us, this is a classic pretext case, both of which are questions of fact decided by the board. Things such as the principal, who, by the way, never testified before the board and didn't explain that last memorandum he sent to the teacher due to the choices you've made. And the evidence is it was laid out before the board and the factual determinations made by the board on the anti-union motivation by the district in discharging the teacher, as well as the pretextual nature of its reasons given. But do we have to assume or presume that that memorandum that says choices you made has to do with union? Can't we not say that the choices that the teacher made had to do with not listening to or following through on some of the recommendations and improving the teaching skills? This court wouldn't review that de novo. It would give deference to the board, and that's a finding of fact made by the board under the manifest weight of the evidence standard. So it wouldn't be a new issue that this court would review de novo at this point. That's a factual finding. And not only that, but combined with the course of hostility by the administrators towards her representation during March and April. And let me, if I can, just make this a big picture. Once she brought the union rep with her in December, things kind of went downhill from there for her. She was, her evaluator changed. It wasn't ever Runyon before, it was someone else who gave her the excellent performance evaluation. She was placed, she was given a poor evaluation. She was placed on a remediation plan. She was advised she could be discharged at the end of the year. There was hostility by the administrators toward the union representation. And then she was discharged after and because she brought the representative with her to the meetings with the district administrators, which. Counsel, how do we know that? With direct evidence or by inference? Well, there's the letter from the principal. I mean, and certain. The factual finding by the board, too. And I guess it would be also by inference because you have the statements of the principal and the other administrator throughout the course of the meetings during March and April, derogatory statements toward the union representation that Runyon brought with her. Do you have an example of that, derogatory statements by the union representatives? Sure. During one of the meetings, she was told to, I believe, sit down and shut up and not to say anything. And then they permitted her to stay. And they said, well, you can stay if you don't say anything at this point. And then you have continuous comments by the principal talking about we don't really need a union representative here. She just makes things more difficult. And then there are multiple things in the letter from the principal, the memorandum from the principal, which was block quoted in my brief talking about how Warning failed to participate in an evaluation process that enabled them to communicate freely. And her actions created barriers to effectively communicate. And the choices she made, remediation became cumbersome and chaotic due to the choices she made. And from all of this evidence, the board found anti-union motivation. And then going on to the next, as Justice Garland pointed out. Under your analysis, counsel, this case was over for the school district as soon as they said you're not entitled to union representation, right? Because even if they didn't acquiesce and either pursued or, Ms. Warning, pursued the fact that they were entitled to union representation, at the end of the day, they started out by saying you're not entitled to union representation. So without any direct evidence, as has been asserted, wasn't the board going to find as soon as that statement was made that everything else was pretextual? I want a union rep. No, you're not entitled to one. So here they acquiesce. You say, well, they can't, you know, they acquiesced, they should have either proceeded or Ms. Warning could have proceeded for a determination on that. Correct. If the determination was made she's entitled to a union rep or not a union rep, wouldn't your argument be the very same that based on these facts and the fact that they didn't think she was entitled to a union rep at the outset, everything after that would be pretextual? Well, at that point, the Weingarten issue would have been before the board once the district would have asserted its rights. So at that point, we would have decided, the board would have decided, had the district properly asserted its right and refused to meet with her with representation, then you're correct, the board would have decided whether she had the right. But at this point, it progressed through this anti-union motivation pretext case because they let her bring the union representative, and then as we follow through discharged her because of it. And what I'm saying is even if they hadn't acquiesced and there was a determination, I think wouldn't the same argument have been made at the end of the day? They didn't want her to have a union rep. They didn't like that she was embracing the union. So the same exact argument would be made, wouldn't it, whether they acquiesced or not? It would be made at that point, but the determination at that point by the board would have been whether she had the right. Now, I'm not sure in your scenario, is she eventually discharged? I mean, we only get to that once there is action on the part of the discriminatory action on the part of the district. Just saying, yes, she's not entitled, we're stopping you, we're not meeting you with representation or no, then we decide the Weingarten issue. But to go forward, what happens after that, and because of the union representation, that's how the unfair labor practice action percolates up through the board at that point. Counsel, so we shouldn't be concerned with whether this is protected activity or not. The question in what the contract says. Correct. Our focus should be on whether there is acquiescence. There was acquiescence. That's not disputed. But the fact that they acquiesced, she brought the union rep with her and discharged her because of it. Acquiescence, she brought the union rep. That's clearly straightforward protected union activity under 14A3, under Georgetown, Ridge Farm, and Abuseer. To engage, to seek out and accompany by a union representative to a meeting with school administrators is clearly protected activity under 14A3. You're absolutely right, Justice Garland. We don't have to worry about Weingarten. And the contractual waiver, if you will, of Weingarten, the contractual argument, collective bargaining agreement argument, goes with Weingarten. We don't worry about it. To be clear, the board did not make the decision whether this teacher had a right to union representation. This court did not make that decision. The labor board you're talking about. Correct. Yes, not the school district. The labor board found it was unnecessary for it to make the decision whether she had a right to union representation at these types of meetings. You indicate that the board, the high school board, I guess, or the school board acquiesced. It sounds like it was only a partial acquiescence. They said, okay, you can come, but you can't talk, you can't pass notes, you can't do anything. Would Morning have had the right at that point to file an unfair labor practice claim? Well, the key difference between your hypothetical and ours is she brought the union rep, and so that's what triggers the protected union activity. I suppose had they said and gone forward with she brought the union rep and you have to just sit there, would be another kind of tangential issue that would have to be resolved separately. But in this case, she brought the union rep with her, and that's clearly the protected union activity under 14A3. That doesn't sound right, though. Then why have one kind of a hearing where she has the opportunity in a disciplinary action to have a union representative there, which is a protected right, and then have another kind of a hearing where she doesn't have a right to have a union representative there. So what's the difference? I mean, if she could or anybody could bring a union rep to any kind of a meeting where they don't have a protected right because that board or that hearing body acquiesces, then they all of a sudden now merge into a protected right. Just because she brought him there or her there, now it becomes a protected right. But it's the district's, it's the employer's responsibility to stop it, and that's how it percolates through. And then proceed legally and make sure that through the court system or the Labor Relations Board that they stop whatever proceedings to remediate her, to help her keep her job so she can go through the legal system to make a determination. That's the choice the district made to not cut her rights off like that, to meet with her with her union rep. Try to help her to keep her job. But the district picked. They can pick to litigate the Weingarten issue from the get-go and deny her union representation, or they can go through and meet with her and say, well, we don't really, maybe she doesn't have it, but we're going to acquiesce and let her bring the union rep. Then the horse is out of the barn. They don't get to go back after the fact and after they discharge her for bringing the union rep and go back and retry the rights-based issue. But aside from that, does the record reflect that they actually gave her suggestions to help her in her teaching? Is there anything in the record that says that they tried to give her an opportunity to help her with her remedial treatment? Well, I believe the principal presented her with a remediation plan. Okay. At these first two meetings, there was no objection to the union rep coming. Is that correct? In December? Is that what you're referring to? We're going back to December? Correct. November 22nd was when the warning was received. February 15th? That's when the principal observed her classroom, so it wasn't a meeting per se. He came in and observed. There was no objection in December. March 4th, 2005. I'm sorry, when she met with the principal the first time to receive her evaluation and the remediation plan, at the end of that meeting, the principal said, we don't really need the union here anymore. It was at the end of that meeting after acquiescence to his presence. He said that at the end of the meeting, but the rep was there during the meeting. That's correct. And that's when it's your position, everything changed. Right, because the district failed to stand on what it believed its rights were. They could choose to have this percolate through as a Weingarten contractual-based issue, and they chose not to. Thank you. I will tender the remaining time to Mr. Klink, and I'll ask that the Court affirm the Board decision. Thank you, Your Honor. May it please the Court, Paul Klink for Appley's Rachel Warning and the Speed Education Association. Let me get to the heart of the pretext issue, which seems to interest the Court very much. There was a variety of, excuse me, the protected activity. There was a variety of protected activity that occurred here. First of all, the assertion of raising complaints under the contract is a protected activity. Rachel Warning and her union representative asked for the specific reasons for her performance in order to guide her in her remediation plan. That was a contractual basis. The contract required those specific reasons. She wanted to know those reasons in order to improve. Did they give them to her? No, that was her frustration throughout. She had the 120-minute observation by her principal. She says, give me the specific reasons what I'm doing wrong. He refused to. He gave her the one-page remediation plan. They met throughout that. He observed her one more time during that two-month period. She kept asking throughout and even afterwards when she was asking, what are the choices? He would not tell her what the choices were that he made. The other is the ---- Is that all? And you said that's all protected activity? Is that what you said? Yes, because she is standing on her rights of the contract. The contract says she's entitled to specific reasons. She had the union rep at the December 2004 meeting. The simple fact that she had a remediation plan and there were meetings under it is a contractual right. Does that mean then she had the right to the union representative at those meetings? Is there a difference between the hearing for disciplinary reason under the contract for her to have a union representative and a difference between these remedial hearings to have a union representative? Yes, Your Honor. There is a difference, and she has a right under both of those. Clearly under the investigatory disciplinary meeting, but as the labor board said in Summit Hill, performance-based meetings are investigatory meetings, and under this contract, the only reason those meetings existed was because of the contract. As a non-tenured teacher, she is not entitled to have a remediation plan and meetings. But the opposing counsel admitted that in oral argument today. They've admitted it in the brief. They admitted it at the hearing. The only reason those meetings occurred is because they were a creature of contract. So asserting those rights are contractual rights. So according to your argument, we shouldn't talk about acquiescence or get to that? It's not necessary to because those are the facts that are presented here. The school board did acquiesce. They let her have the union rep. But she didn't have the protected right to have one. She did have a protected right to have one. And that's in the contract. That is by the contract. The existence of the meeting itself is by the contract. But is it in the contract that she has the right to have a union representative? Word for word, no. It doesn't say you have a right to have a union representative, therefore discipline. It says, no, it does say that there are three articles. There's 3-8, which refers to performance, 3-9 on evaluation, and 3-10, which is discipline. In 3-10, it says that discipline is not performance-based. The court should read that. Discipline is conduct-based. It's not performance-based. To say that she has a right to a representative in a conduct investigation does not mean she does not have one in a performance one. She has a right in both. How much deference do we have to give to the majority's opinion that indicates that the memo referencing choices were likely one of the choices being warnings, your statement, protected activity and insisting on a union member? That is a fact-based finding by the Labor Board. The board has to, excuse me, the court has to find, has to give great deference to that, has to find that's against the manifest way. What facts supported that opinion outside of the word choices in the memo? Well, Rachel warning again went to meet with the principal and said, what are the choices that I made? He refused to tell her that. There's hostility from December through March of having a union representative. The other two reasons that they gave is that she was late to meetings and that she failed to come prepared to meetings. The record evidence was clear. She was never late to any meetings. In fact, the principal was the one who was late, and she was always prepared. Was there ever a plan put in place, this remedial action? Just the one page, just the one page that's in the record, the letter that he gave on March 1st. And that had a number, were there any choices attached to that one page? I don't believe, Your Honor. Thank you for allowing me the extra time. Any other questions? And we request that you enforce the order of the Labor Board, order Rachel warning reinstated with full back pay and as a consequence receive tenure. Thank you. Thank you, counsel. Case number 108. I'm sorry. Excuse me. No problem, Your Honor. I'll be brief. No, you don't have to be brief. You can use whatever time you have. I appreciate that, Your Honor. A couple points that I wanted to clear up. There's been a lot of talk about this December 18th, 2004 meeting, and they're trying to suggest to the court that her bringing of a union representative to that meeting was the rationale behind her getting discharged. However, the record clearly indicates that the union representative, Ms. Wierzbicki, was instructed to be at the meeting by our Director of Human Resources, Dr. Janera Walters. So they're asking this court to believe that we discriminated against her for doing exactly what we told her to do. So I think that that would be an improper ruling of this court. Mr. Klink briefly just said that Ms. Warning was attempting to assert contractual rights during these meetings. What the record shows is that under the subsections in her evaluation, she was insisting upon a rating for each individual subsection. She had never asked for that before, and, in fact, the district submitted unrebetted evidence that the union and the school district had agreed that it was not required to rate her that way. So once again, she's trying to insist upon rights that the union has already negotiated away on her behalf. Lastly, I'd just like to speak briefly to the issue about hostility towards unionization, which they put forth. The labor board and the appellate court both found that there was hostility towards unionization, essentially because the district disagreed with their reading of the collective bargaining agreement. I would submit to the court that there can never be hostility towards unionization. There was a disagreement. The fact that we read the collective bargaining agreement different doesn't mean that we are being hostile towards the union or unionization. We are simply trying to assert our reading of the agreement. There's no other evidence of hostility towards unionization, and, in fact, I think the evidence shows pretty clearly that we continued to try and work with the union, and when we didn't like the responses from one union member, we kept working our way up the ladder. The last part is about the shifting rationale that they found. In the evaluation, which was done on March 1, 2005, he finds that she's an unsatisfactory teacher. When he writes the memo at the end of the school year, he says that she's improved some in instruction and that she still hasn't improved her communications part at all. They found a shifting rationale because, in an exception to the administrative law judge's findings that she was a satisfactory teacher, the district asserted, well, there was nothing in that memo that says she's a satisfactory teacher. It only said that she improved in the area of instruction. Improving from unsatisfactory doesn't necessarily mean that you're now satisfactory if you were unsatisfactory before. If you got a 10 percent on an exam and then got a 45 percent, you've improved. I could even say you've demonstrably improved. You've still failed, and you're still unsatisfactory. And that was the consistent rationale throughout this case, is that the district determined that she was an unsatisfactory teacher, and that was the reason that it decided to non-renew her contract. What about acquiescence? We tried to assert that she couldn't be there, Your Honor, and we just continuously tried to work with the union. But I don't believe that our acquiescence makes her right protected in any fashion. The fact that we permitted her to do it doesn't make the right any more protected or unprotected than it was to begin with. So I don't believe that there was an acquiescence. We were attempting to assert our right, but we were trying to get through the remediation plan so we could make a determination with this teacher. Did I answer Your Honor's question? It does. Thank you. Counsel suggests that at the point where the union representative showed up, even though there was no protected right to have her there, you should have stopped the hearing and proceeded to work that through the labor relations. Is that something you would do normally for every teacher, every mediation? I don't think that would be a reasonable thing for the district to do because I think we would go into the trick bag that Justice Thomas suggests where now if we decide to non-renew her contract and never meet with her, she's going to say, well, you wouldn't meet with me because I brought a union representative. So either way that we proceed, we're going to be determined to have engaged in an unfair labor practice. So I don't believe that that is the basis for that. Mr. Gleeson, what's your response to Mr. Klink's comments that there were at least two other kinds of protected activities that were guaranteed or being asserted under the contract rights? One, asking for specifics on the performance was a protected right under the contract or creature of the contract, I think is the phrase he used. And secondly, that the contract provided to her as a non-tenured teacher the right to a remediation plan and meetings on that, but for the contract provision as a non-tenured teacher at law, she would not have had that right. Do you agree or disagree with those two points? I disagree factually with the first point where he claims that she was trying to get specific information. And as I stated when I first stood up, what she was trying to get was individual ratings. She didn't have the ability under the collective bargaining agreement to challenge the evaluation ratings. She could only challenge the procedures. So whether she was found unsatisfactory, her trying to challenge that, she did not have the right to do, and that's the same exact conduct that the teacher engaged in in Schomburg. And I believe you said the second one was her simply showing up for the meeting. I think the second thing was that the contract provided her with the right to have a remediation plan and a meeting on that plan or meetings on it. What the contract said was we could not non-renew her without one attempt to remediate her deficiencies. There was nothing in there that said how we were to go about remediating those deficiencies, and we provided her with the rights under that because we gave her a remediation plan. Before she even asked for a union representative at the March 1, 2005 meeting, we had the plan prepared and gave it to her at that meeting. So I don't believe that she could now come in and say, well, I was discharged for asking to be remediated because we undertook that on our own to do. And one other follow-up question. Sure. I don't know if we're using two different labels to describe the same thing, but you talked about that there wasn't a right to get these ratings, and I believe Mr. Klink and Ms. Shulstrom talked about specifics under the contract. Are we talking about two different labels that mean the same thing? I think we're talking about two different things, Your Honor, and I could direct you to the pages of the transcripts if you'd be happy. In page 32, she said she wanted to be rated for each performance objective. In page 137, she went through each subsection and said, is that where I'm unsatisfactory? Is that where I'm unsatisfactory? What she was insisting upon was a rating for each thing, for each subcategory, and that was specifically not permitted by the contract, and it wasn't permitted by the side letter agreement between the union and the district. The facts relied upon by the majority to indicate that choices was this pretextual issue. What's your response to that? My response is, Your Honor, and I realize that that's a fact question and we're against a manifest weight. I think that the Labor Board can draw inferences, but the inferences have to be reasonable. There was nothing in the record to suggest that those choices were anti-union animus or your choice to have a union representative. It could have been anything. The inference has to be reasonable and based upon some testimony. There was no testimony there that that choice has meant anything, so they essentially made an unreasonable inference. Could choices have related to the one-page plan? It could have. Certainly, Your Honor. Were there facts related to things in that plan that you could also infer choices? I mean, I don't have it in front of me, so. Sure. I mean, it could have inferred her choice to continually argue about her performance ratings, the ratings that she was given, rather than sitting down with the plan and attempting to work on her deficiencies. Instead, she wanted to argue about whether she was an unsatisfactory teacher or not, which she didn't have the right end of the bargaining agreement to do. So she continued to argue about the poor rating when what she should have been doing was saying, what do I need to do to get better? And that's not what she did. So with these factors in mind, we would ask that you reverse the Illinois Appellate Court and reverse the Illinois Educational Labor Relations Board and find in favor of the Ski District 802. Thank you. Case number 108-785 will be taken under advisement.